UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-24318-RAR

**RAFAEL ANTONIO GOMEZ**,

    Plaintiff,

v.

**OFFICER BRANDON R. HOO**, *et al.*,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss the Amended Complaint, filed August 20, 2021 [ECF No. 31] ("Motion"). The Court, having reviewed the Motion, Plaintiff's Response in Opposition [ECF No. 32] ("Response"), the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion [ECF No. 31] is **GRANTED** as set forth herein, and the case is **DISMISSED** *with prejudice* based on qualified immunity.

## BACKGROUND

On October 20, 2020, Plaintiff, proceeding *pro se*, filed a Complaint for Violation of Civil Rights [ECF No. 1] ("Complaint") against Defendants, Officer Brandon R. Hoo (in his official capacity), Officer David G. Sanchez (in his official capacity), and the Miami-Dade Police Department. On June 7, 2021, Defendants filed a Motion to Dismiss [ECF No. 17] for failure to state a claim upon which relief could be granted. The Court, in granting Defendants' Motion to Dismiss, provided Plaintiff with leave to amend his purported claims under 42 U.S.C. section 1983. *See* [ECF No. 25] at 5. Plaintiff proceeded to file an Amended Complaint [ECF No. 26], which essentially contains the same allegations set forth in his original complaint—but now brings said claims against the Defendant Officers in their individual, as opposed to official, capacity. Plaintiff

alleges that on May 28, 2020 at approximately 4:45 P.M., he was subjected to a "retaliatory traffic stop without cause"—conducted by Officers Hoo and Sanchez—which Plaintiff alleges violated his First and Fourth Amendment rights under the U.S. Constitution. *See* [ECF No. 32]. Given that Plaintiff has brought claims against the officers in their individual capacity, Defendants have raised the defense of qualified immunity in their Motion to Dismiss. *See* [ECF No. 17] at 2.

## LEGAL STANDARD

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although generally, *pro se* complaints are held to a less stringent pleading standard than pleadings drafted by lawyers, *see Abele v. Tolbert*, 130 F. App'x 342, 343 (11th Cir. 2005), "liberal construction of *pro se* pleadings does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Smitherman v. Decatur Plastics Prod. Inc.*, 735 F. App'x 692, 692 (11th Cir. 2018) (citation and quotation omitted).

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678. A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir.

2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

### B. *Qualified Immunity*

Although Defendants' Motion to Dismiss is brought under Rule 12(b)(6), when a defendant raises the defense of qualified immunity in a motion to dismiss, "the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined." *Llauro v. Tony*, 470 F. Supp. 3d 1300, 1310 (S.D. Fla. 2020) (quoting *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010)). "The defense of qualified immunity protects officials performing discretionary functions from liability 'where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1232 (S.D. Fla. 2007) (citation omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To plead qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). An officer acts within the scope of his discretionary authority when his conduct is undertaken in the performance of his official duties. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). Once it is established that an officer was acting within his discretionary authority, the burden shifts to plaintiff to show that the defendant is not entitled to qualified immunity. *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). In determining whether the plaintiff meets that burden, the inquiry is (1) whether the officers' conduct violated

a constitutional or statutory right; and, if so, (2) was the right clearly established at the time of that conduct. *Scott v. Harris*, 550 U.S. 372, 377 (2007). When "a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007).

## ANALYSIS

As it is undisputed that Defendants were acting within their discretionary authority at all relevant times, *see* [ECF No. 26] ¶¶ 2-3, the question here is whether Plaintiff has properly alleged that Defendants violated his constitutional or statutory rights—specifically, his rights under the First and Fourth Amendments. The answer is Plaintiff has not. Given Plaintiff's failure to allege a violation of his First or Fourth Amendment rights, he is unable to overcome Defendants' qualified immunity and the Court need not address the second prong of the relevant inquiry.

To prevail on a First Amendment claim, a plaintiff must show that the "alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). Importantly, a "*de minimis* inconvenience to [a person's] exercise of First Amendment rights[,]" does not amount to a violation of the First Amendment. *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005). While the test directs the Court to consider a person of ordinary firmness, "the plaintiff's actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (internal quotation marks omitted).

The Amended Complaint describes an 8-minute verbal exchange, followed by a 45-minute traffic stop, and an alleged comment by Defendant Sanchez directed at Plaintiff where he stated, "Don't record us, record something else." *See* [ECF No. 26] at 8-9; [ECF No. 32] at 3. Taking Plaintiff's allegations as true, an official merely telling someone not to record them and to "record something else" during an 8-minute verbal exchange would not deter a person of ordinary firmness from exercising their First Amendment rights. Indeed, Plaintiff was not deterred as he continued to film the verbal encounter and the ensuing traffic stop even after Defendant Sanchez's comment and the 8-minute verbal exchange. *See* [ECF No. 26] ¶ 29.

Plaintiff also fails to allege a violation of his Fourth Amendment rights during the 8-minute exchange or the 45-minute traffic stop. In his initial Complaint, Plaintiff stated that "Defendants briefly detained Plaintiff as Plaintiff was video recording traffic stop from across the street; Defendants notif[i]ed Plaintiff that he was free to leave the scene." [ECF No. 1] at 4. In his Amended Complaint, Plaintiff now states he was initially informed that he was not free to leave and then was later told he was free to leave "[a]fter 8 mins." [ECF No. 26] ¶¶ 16-17. Plaintiff does not allege that he was physically restrained in any way. *See generally id*.

While unlawful detention can result in a violation of a citizen's Fourth Amendment rights, "not every encounter between law enforcement officers and a citizen constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Thompson*, 712 F.2d 1356, 1359 (11th Cir. 1983). Even if the 8-minute verbal exchange could be classified as a detention or investigative stop, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity

is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Here, such reasonable suspicion existed. Defendants knew that one of their fellow officers had a restraining order against Plaintiff; they also knew that Plaintiff had an "LEO [Law Enforcement Officer] agitator alert" in the Miami-Dade system and an "approach with caution" designation due to previous arrests for illegally carrying a concealed firearm. *See* [ECF No. 32]; [ECF No. 31-1] at 3.[1] Combined with Plaintiff's decision to interrupt a traffic stop that did not concern him, the Officers had a reasonable articulable suspicion that Plaintiff was about to engage in criminal activity. *See United States v. Hardy*, 806 F. App'x 718, 721 (11th Cir. 2020) (explaining that "when evaluating reasonable suspicion, we consider the totality of the circumstances, which must be viewed in 'light of the officer's special training and experience.'") (quoting *United States v. Matchett*, 802 F.3d 1185, 1192 (11th Cir. 2015)); *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) (noting that to justify a *Terry* stop, officers must "have a reasonable articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity.") (quoting *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000)).

Further, due to Plaintiff's past arrest for firearms charges and a history of contentious interactions with law enforcement, Defendants were "warranted in the belief that [their] safety or that of others was in danger." *Terry*, 392 U.S. at 27. Accordingly, the totality of the

---

[1] These details are gleaned from the Offense-Incident Report [ECF No. 31-1], which is a matter of public record and central to Plaintiff's claims. *See generally Sosa v. Hames*, 218 F. App'x 976, 978 n.2 (11th Cir. 2007) (determining that public records that are central to the claim can be considered on a motion to dismiss).

circumstances here provided the Defendant Officers with reasonable suspicion, and Plaintiff provides no basis for the claim that the 8-minute exchange amounted to an unreasonable seizure under the Fourth Amendment. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (explaining that in determining whether reasonable suspicion exists, courts must review the "totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing).

Similarly, Plaintiff has not sufficiently alleged that the 45-minute traffic stop violated his Fourth Amendment rights. Traffic stops are permitted under the Fourth Amendment so long as the stop is not "'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). The Supreme Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id*. Once a stop takes place, the stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 507 (1983).

Plaintiff states that he drove his vehicle into the parking lot for the purpose of filming a traffic stop. *See* [ECF No. 26] ¶¶ 6-9. The Offense-Incident Report explains that Plaintiff exited the parking lot with a dealer tag on his vehicle and the license plate did not reflect that the tag was registered to that particular vehicle. *See* [ECF No. 31-1] at 3. As dealer tags are only "valid for use on motor vehicles or mobile homes owned by the dealer to whom such plates are issued while the motor vehicles are in inventory and for sale, or while being operated in connection with such dealer's business[,]" Fla. Stat. § 320.13(1)(a), Defendants had probable cause to believe that Plaintiff was violating the statute governing the use of dealer tags. And, to the extent that Plaintiff alleges the traffic stop was unconstitutional in duration, there is no allegation that

the stop lasted longer than necessary to effectuate its purpose. Further, by Plaintiff's own admission, he extended the length of the stop when he asked for medical assistance. *See* [ECF No. 26] ¶¶ 23-28. In sum, Defendants' conduct leading up to and during the traffic stop did not violate the Fourth Amendment.

## CONCLUSION

Ultimately, Plaintiff fails to adequately plead the existence of conduct that violates the First and Fourth Amendment. Accordingly, as there are no other statutory or constitutional violations under which Plaintiff requests relief, Defendants are entitled to qualified immunity. *See Llauro*, 470 F. Supp. 3d at 1317.[2] Thus, based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

(1) Defendants' Motion to Dismiss the Amended Complaint [ECF No. 31] is **GRANTED**.

(2) Plaintiff's claims under 42 U.S.C. Section 1983 are hereby **DISMISSED *with prejudice***. *See Mendoza v. City of Hialeah*, No. 17-21790, 2017 WL 6514687, at *3 (S.D. Fla. Dec. 20, 2017).

---

[2] The Amended Complaint—which utilizes a template—appears to also conclusorily invoke Article 1, Sections 9 and 12 of the Florida Constitution ("Due Process" & "Search and Seizure") and Title XLIV, Chapter 760 of the Florida Statutes ("Discrimination in the Treatment of Persons"). However, these provisions are not referenced again in any of the allegations in the Amended Complaint. Thus, as an initial matter, these ancillary claims warrant dismissal for failure to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Nevertheless, to the extent Plaintiff is relying on these provisions, the Court declines to exercise jurisdiction over such state law claims given its dismissal of the federal claims based on qualified immunity. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citations omitted). Similarly, to the extent Plaintiff attempts to assert a claim against Miami-Dade County, it is hereby dismissed as "[o]nly when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise." *Vineyard v. County of Murray*, 990 F.2d 1207, 1211 (11th Cir. 1993).

(3)  To the extent any state claw claims are asserted in the Amended Complaint, they are hereby **DISMISSED** *without prejudice*.  See *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

(4)  The Clerk is directed to terminate all pending motions and deadlines, and thereafter **CLOSE** the case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of September, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**